IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
NO. 7:21-CV-108-D

| | |
|---|---|
| ROBERT ZIMMERMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| GREAT AMERICAN INSURANCE ) | |
| GROUP, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

On June 15, 2021, Robert Zimmerman ("Zimmerman" or "plaintiff"), proceeding pro se, moved for leave to proceed in forma pauperis [D.E. 1] and filed a proposed complaint [D.E. 1-2]. On July 7, 2021, Zimmerman filed a proposed amended complaint [D.E. 4]. On August 17, 2021, the court denied the motion without prejudice because it was incomplete and set a deadline for Zimmerman to either particularize his motion or tender the filing fee [D.E. 5]. On September 7, 2021, the court granted Zimmerman's particularized application to proceed in forma pauperis and filed the amended complaint. See [D.E. 6–8].

All defendants move to dismiss the complaint [D.E. 31, 36, 41, 53]. The court notified Zimmerman about the motions to dismiss and the consequences of failing to respond [D.E. 38, 39, 43, 55]. See Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam). Zimmerman has responded in opposition to defendants' motions [D.E. 65, 66, 67, 69]. Zimmerman moves for entry of default against several defendants [D.E. 48], and those defendants responded in opposition [D.E. 60, 61, 62]. Several defendants and Zimmerman have moved for sanctions [D.E. 36, 41, 53, 70, 74,

76]. As explained below, the court grants in part the motions to dismiss, dismisses the action, and denies the remaining motions.

I.

Zimmerman owns and resides in a townhome in Pender County, North Carolina, in a residential development called Olde Point Villas ("OPV"). Am. Compl. [D.E. 8] ¶ 3. The OPV homeowners' association ("HOA") "governs the 38 OPV townhomes," and defendant Ostmann is the HOA president. Id. ¶¶ 10–12. Defendant Parker "is the registered agent for defendant HOA, and the president and sole owner of defendant Atlantic Shores Management, LLC," ("ASM"). Id. ¶ 8. The HOA hired as counsel defendant Waters, "an attorney/partner employed by defendant Jordan Price." Id. ¶ 6; see id. ¶¶ 120–21. The "HOA contracted with defendant [Great American Insurance Company[1]] to insure plaintiff's townhome against storm damage," and defendant Salafia "is a senior claims specialist for defendant [Great American]." Id. ¶¶ 2, 141–42.

In September 2018, Hurricane Florence significantly damaged OPV, including Zimmerman's home. Id. ¶¶ 18–19, 46. "Plaintiff's property was insured by defendant . . . [Great American]'s $7,000,000.00 insurance policy for approximately $200,000.00. Immediately after Hurricane Florence, a damage report prepared by a professional damage calculation company estimated the damages to plaintiff's property from Hurricane Florence at approximately $70,000.00." Id. ¶ 27. Defendant Danco Builders, Inc. ("Danco") "was the primary contractor, hired to repair the damages inflicted by Hurricane Florence on the" OPV townhomes. Id. ¶ 4; cf. id. ¶ 76. Defendant Coggins "is possibly an owner, or sole owner, of defendant Danco." Id. ¶ 5.

---

[1] Zimmerman identified this defendant as "Great American Insurance Group (*GAIG*) also known as the Great American Insurance Company." Am. Compl. ¶ 1. The court uses the term preferred by this defendant, "Great American." See [D.E. 32] 1.

2

"On information and belief, defendants HOA, Parker, Ostmann, ASM and OPV had zero experience managing the remediation of damage caused [by] a large hurricane or any other disaster, yet they took it upon themselves to manage the remediation of 38 townhomes with moderate to extensive damage from Hurricane Florence without seeking expert large scale remediation project management experience or seeking expert assistance in dealing with defendant [Great American]." Id. ¶ 65. "While attempting to manage the 2+ year remediation of the 38 OPV townhomes that with zero disaster recovery experience, defendants Parker and ASM were also singlehandedly managing approximately 300 other homes and taking vacations." Id. ¶ 62. "Danco estimated the remediation project would take approximately six months. In fact, it took over two years and is still incomplete." Id. ¶ 66; see id. ¶ 153. At some point, unspecified litigation resulted in a "$3,000,000.00 mediation settlement between defendant [Great American] and defendants Danco, Coggins, and . . . OPV." Id. ¶ 40; see id. ¶¶ 34 (describing legal fee paid to Waters and Jordan Price for the mediation), 149. Numerous disputes arose between Zimmerman and various defendants concerning the project, including disputes regarding HOA special assessments, liens against his townhome, threats of condemnation and foreclosure, and "important reasonable questions plaintiff has previously and repeatedly asked."[2] Id. ¶¶ 21–23, 26, 50–51, 57–58, 78–116, 145–49.

In January 2021, Zimmerman filed a lawsuit in Pender County Superior Court against Danco, Coggins, Waters and Jordan Price, Parker, the HOA, ASM, and "John and Jane Does," asserting numerous claims, including breach of contract, wrongful interference with contract, breach of the implied covenant of good faith and fair dealing, negligence and gross negligence, fraud and fraud in the inducement, constructive fraud, unfair and deceptive trade practices, breach of duty, breach

---

[2] Zimmerman also alleges that he has received "[p]eriodic death threats from unidenti[fi]ed sources" but he "is inclined not to take them seriously." Am. Compl. ¶ 53.

of fiduciary duty, conversion, negligent misrepresentation, invasion of privacy, private nuisance, civil conspiracy, unjust enrichment, attorney malpractice, and "Civil RICO." See [D.E. 37] 16–50; [D.E. 42-1, 54-1] (copies of the first complaint). In this action, several of Zimmerman's claims replicate or substantially replicate several claims he asserted in his Pender County suit. All defendants moved to dismiss the action in Pender County Superior Court, and on May 20, 2021, the state court dismissed with prejudice all claims and defendants, except Zimmerman's claim for unjust enrichment against defendants ASM and OPV, which the court dismissed without prejudice. See [D.E. 37] 61; [D.E. 42-2, 54-2] (copies of the state court orders). Zimmerman appealed, but on September 20, 2021, he withdrew the appeal. See [D.E. 37] 81; [D.E. 54-3] (copies of the notice of appeal and withdrawal).

On June 15, 2021, Zimmerman commenced this action. On July 12, 2021, Zimmerman filed a second complaint in Pender County Superior Court naming all of the defendants to the instant action. On September 13, 2021, Zimmerman voluntarily dismissed that complaint. See [D.E. 37] 86–131, 139–41; [D.E. 42-3, 42-4, 54-4, 54-6] (copies of the second complaint and the notice of voluntary dismissal).

II.

Salafia moves to dismiss under Rule 12(b)(2), arguing the court lacks personal jurisdiction over her. See [D.E. 32] 3, 9. Zimmerman alleges that Salafia is a citizen of Connecticut. See Am. Compl. ¶ 2. The court does not have personal jurisdiction over a nonresident defendant unless jurisdiction comports with North Carolina's long-arm statute and the Fourteenth Amendment's Due Process Clause. See, e.g., Mitrano v. Hawes, 377 F.3d 402, 406 (4th Cir. 2004). North Carolina's long-arm statute extends personal jurisdiction over nonresident defendants consistent with the

4

Fourteenth Amendment's Due Process Clause. See Christian Sci. Bd. of Dirs. v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001). Thus, the statutory inquiry merges with the constitutional inquiry. See id.

Due process requires a defendant to have "certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Helicopteros Nacionales de Colom., S.A. v. Hall, 466 U.S. 408, 414 (1984) (alteration and quotations omitted). The minimum contacts analysis focuses on whether a defendant "purposefully directed his activities at residents of the forum" and whether the causes of action arise out of or relate to those activities. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (quotation omitted); see Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 141 S. Ct. 1017, 1024–25 (2021). The analysis ensures that a defendant is not haled into a jurisdiction's court "solely as a result of random, fortuitous, or attenuated contacts." Burger King, 471 U.S. at 475 (quotations omitted); see Ford Motor Co., 141 S. Ct. at 1025. The analysis "focuses on the relationship among the defendant, the forum, and the litigation." Walden v. Fiore, 571 U.S. 277, 284 (2014) (quotation omitted); see Ford Motor Co., 141 S. Ct. at 1024–25; Bristol-Myers Squibb Co. v. Superior Ct., 137 S. Ct. 1773, 1781 (2017).

The extent of the contacts needed for jurisdiction turns on whether the claims asserted against a defendant relate to or arise out of the defendant's contacts with the forum state. See Ford Motor Co., 141 S. Ct. at 1025; Bristol-Myers Squibb, 137 S. Ct. at 1781; ALS Scan, Inc. v. Digit. Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002); Atl. Corp. of Wilmington, Inc. v. TBG Tech Co., 565 F. Supp. 3d 748, 760 (E.D.N.C. 2021). If the defendant's contacts with the state are the basis for the suit, specific jurisdiction may exist. ALS Scan, 293 F.3d at 712. In determining specific jurisdiction, the court considers: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out

5

of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." Id. (alteration and quotations omitted); see Sneha Media & Ent., LLC v. Assoc. Broad. Co. P Ltd., 911 F.3d 192, 198 (4th Cir. 2018); Atl. Corp., 565 F. Supp. 3d at 760. Thus, the "constitutional touchstone" of specific personal jurisdiction "remains whether the defendant purposefully established minimum contacts in the forum State." Burger King Corp., 471 U.S. at 474 (quotation omitted); see Bristol-Myers Squibb, 137 S. Ct. at 1781–82; Walden, 571 U.S. at 284–91.[3]

First, in analyzing the extent to which a defendant purposefully availed itself of the privilege of conducting activities within a state, a court examines "various non-exclusive factors" including:

> (1) whether the defendant maintained offices or agents in the State; (2) whether the defendant maintained property in the State; (3) whether the defendant reached into the State to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the State; (5) whether a choice of law clause selects the law of the State; (6) whether the defendant made in-person contact with a resident of the State regarding the business relationship; (7) whether the relevant contracts required performance of duties in the State; and (8) the nature, quality, and extent of the parties' communications about the business being transacted.

UMG Recordings, Inc. v. Kurbanov, 963 F.3d 344, 352 (4th Cir. 2020) (quotation omitted); see Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009); Atl. Corp., 565 F. Supp. 3d at 760.

Second, the plaintiff's claims must have arisen out of or relate to those activities that the defendant directed at the State. See Ford Motor Co., 141 S. Ct. at 1026–32; UMG Recordings, 963

---

[3] If a defendant's contacts with the forum state are not the basis of the causes of action, general jurisdiction may "arise from the defendant's general, more persistent, but unrelated contacts with the State." ALS Scan, 293 F.3d at 712. In "the 'paradigm' case, an individual is subject to general jurisdiction in her place of domicile." Ford Motor Co., 141 S. Ct. at 1024. Because Salafia is a citizen of Connecticut, general jurisdiction does not exist in this court.

6

F.3d 354–55; Atl. Corp., 565 F. Supp. 3d at 760. A court looks at whether the defendant's "activity in the forum state is the genesis of the dispute." UMG Recordings, 963 F.3d at 354 (quotation and alteration omitted).

Third, the court must analyze whether the exercise of personal jurisdiction is constitutionally reasonable. See Ford Motor Co., 141 S. Ct. at 1030; Bristol-Myers Squibb, 137 S. Ct. at 1780–81; Burger King, 461 U.S. at 476–78; World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980); Consulting Eng'rs, 561 F.3d at 279; Atl. Corp., 565 F. Supp. 3d at 760–61. This analysis "permits a court to consider additional factors to ensure the appropriateness of the forum once it has determined that a defendant has purposefully availed itself of the privilege of doing business there." Consulting Eng'rs, 561 F.3d at 279. Such factors include:

> (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social polices.

Id.; see Atl. Corp., 565 F. Supp. 3d at 761.

The plaintiff bears the burden of establishing personal jurisdiction. See UMG Recordings, 963 F.3d at 350; Grayson v. Anderson, 816 F.3d 262, 267 (4th Cir. 2016); Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). When, as here, a court resolves a personal jurisdiction challenge without holding an evidentiary hearing, a plaintiff initially needs only to make a prima facie showing of personal jurisdiction. See Hawkins v. i-TV Digitalis Tavkozlesi zrt., 935 F.3d 211, 226 (4th Cir. 2019); Sneha Media, 911 F.3d at 196–97; Grayson, 816 F.3d at 268; Combs, 886 F.2d at 676. "The 'prima facie case' analysis resembles the plausibility inquiry governing motions to dismiss for failure to state a claim under Rule 12(b)(6)." Hawkins, 935 F.3d at 226 (emphasis omitted). Even when a plaintiff initially shows a prima facie case, a plaintiff must eventually prove personal jurisdiction

7

by a preponderance of the evidence. See Sneha Media, 911 F.3d at 197; Grayson, 816 F.3d at 268; Combs, 896 F.2d at 676. In considering whether a plaintiff has established a prima facie case, a court may consider "the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint." Grayson, 816 F.3d at 268; see Hawkins, 935 F.3d at 226; UMG Recordings, 963 F.3d at 350; Mylan Lab'ys, Inc. v. Akzo, N.V., 2 F.3d 56, 60, 62 (4th Cir. 1993). The court considers the allegations and supporting evidence in the light most favorable to the plaintiff. See UMG Recordings, 963 F.3d at 350; Hawkins, 935 F.3d at 226; Grayson, 816 F.3d at 268; Combs, 886 F.2d at 676.

Zimmerman alleges that Salafia "is a senior claims specialist for" Great American who "operates from a home/office" in Connecticut, "was [un]willing to provide the dates and amounts defendant [Great American] paid to defendant HOA and others," and "is sued for her part in the conspiracy to keep the dates and amounts" of payments Great American "paid to defendant HOA and possibly others." Am. Compl. ¶¶ 2, 36, 39; see [D.E. 69-1] (one email from Salafia to Zimmerman referencing a single phone call).

Even viewing Zimmerman's amended complaint in the light most favorable to Zimmerman, Zimmerman failed to make a prima facie showing of personal jurisdiction over Salafia. See, e.g., Pandit v. Pandit, 808 F. App'x 179, 184–87 (4th Cir. 2020) (per curiam) (unpublished); Consulting Eng'rs, 561 F.3d at 279 n.5; Atl. Corp., 565 F. Supp. 3d at 759–66; Parker v. Pfeffer, 274 N.C. App. 18, 24, 850 S.E.2d 615, 619–20 (2020); Miller v. Szilagyi, 221 N.C. App. 79, 92–93, 726 S.E.2d 873, 883–84 (2012). Accordingly, the court grants Salafia's motion to dismiss.

III.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–

8

63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352–53 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a party's factual allegations must nudge its claims beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79; Twombly, 550 U.S. at 570.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court may also consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity" without converting the motion into one for summary judgment. Goines, 822 F.3d at 166. Additionally, a court may take judicial notice of public records. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

9

A.

Zimmerman asserts claims against Great American for abuse of process, breach of contract, infliction of severe emotional distress, fraudulent concealment, breach of fiduciary duty, civil conspiracy, unjust enrichment, tortious interference with existing contracts, and negligence. See Am. Compl. ¶¶ 125–29, 134–84, 191–96, 201–75. Great American argues that Zimmerman lacks standing to sue Great American because he improperly relies on a theory of breach of the insurance contract between Great American and the HOA. [D.E. 32] 5–25. Alternatively, Great American argues Zimmerman fails to state a claim. See id.

To invoke the power of a federal court, a plaintiff must demonstrate that he has standing under Article III of the Constitution. See Doe v. Obama, 631 F.3d 157, 160 (4th Cir. 2011); White Tail Park, Inc. v. Stroube, 413 F.3d 451, 458–59 (4th Cir. 2005). Article III "[s]tanding implicates the court's subject matter jurisdiction." South Carolina v. United States, 912 F.3d 720, 726 (4th Cir. 2019); see Martineau v. Wier, 934 F.3d 385, 390–91 n.2 (4th Cir. 2019). To establish Article III standing, a plaintiff must show that "(1) [the plaintiff] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 180–81 (2000); see TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2203 (2021); Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016); Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992); Doe, 631 F.3d at 160. These requirements are "the irreducible constitutional minimum of standing." Lujan, 504 U.S. at 560.

Under North Carolina law, a plaintiff who is not a direct party to a contract must "show (1) that a contract exists between two persons; (2) that the contract is valid and enforceable; and (3) that

10

the contract was executed for the direct, and not incidental, benefit of the plaintiff." Holshouser v. Shaner Hotel Grp. Props. One Ltd. P'ship, 134 N.C. App. 391, 399–400, 518 S.E.2d 17, 25 (1999), aff'd, 351 N.C. 330, 524 S.E.2d 568 (2000). A direct benefit for the plaintiff exists "if the contracting parties intended to confer a legally enforceable benefit on that person." Id., 134 N.C. App. at 400, 518 S.E.2d at 25.

"The question of whether a contract was intended for the benefit of a third party is generally regarded as one of construction of the contract. The intention of the parties in this respect is determined by the provisions of the contract, construed in light of the circumstances under which it was made and the apparent purpose that the parties are trying to accomplish." Johnson v. Wall, 38 N.C. App. 406, 410, 248 S.E.2d 571, 574 (1978). A court should strictly construe the actual language of the contract against the party seeking such enforcement. Holshouser, 134 N.C. App. at 400, 518 S.E.2d at 25.

The court has reviewed the terms of the insurance contract between Great American and OPV. See [D.E. 32-2]. The HOA is the only named insured, cf. Am. Compl. ¶¶ 141–42, the policy "does not create a right of enforcement for the individual unit owners, and there is no express intent to confer standing on the unit owners." Stanton v. QBE Ins. Corp., No. 3:17-cv-00565-SB, 2017 WL 5194506, at *8 (D. Or. Nov. 9, 2017) (unpublished); see Mortera v. State Farm Fire & Cas. Co., 561 F. Supp. 3d 684, 690–97 (S.D. Miss. 2021), aff'd, No. 20-60785, 2022 WL 1652834 (5th Cir. May 24, 2022) (per curiam) (unpublished); Harnarrine v. Praetorian Ins. Co., No. 18-62848-CIV-DIMITROULEAS, 2019 WL 8508084, at *5 (S.D. Fla. Jan. 10, 2019) (unpublished); Burlison v. Allstate Ins. Co., No. CV 12-4092-GHK (MRWx), 2012 WL 12884683, at *6 (C.D. Cal. Sept. 25, 2012) (unpublished); Peters v. Lexington Ins. Co., 836 F. Supp. 2d 1117, 1123–26 (D. Haw. 2011).

11

Accordingly, to the extent Zimmerman bases his claims on the insurance contract between the HOA and Great American, the court grants Great American's motion to dismiss for lack of standing.

Alternatively, the court has reviewed plaintiff's amended complaint, the parties' arguments, and the record. See Fed. R. Civ. P. 12(b)(6); Iqbal, 556 U.S. at 677–78; Twombly, 550 U.S. at 555–63, 570; Coleman, 626 F.3d at 190; Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255–56 (4th Cir. 2009); Giarratano, 521 F.3d at 302. Zimmerman has failed to state a claim against Great American. Accordingly, the court grants Great American's motion to dismiss.

B.

The remaining defendants argue that res judicata (i.e., claim preclusion) bars this action. See [D.E. 37, 42, 54]. "A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981), abrogated on other grounds by Rivet v. Regions Bank of La., 522 U.S. 470 (1998); see Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc., 140 S. Ct. 1589, 1594–95 (2020); Pueschel v. United States, 369 F.3d 345, 354 (4th Cir. 2004). A claim or defense need not have been "actually presented in previous litigation," because claim preclusion also bars "all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." Pension Benefit Guar. Corp. v. Beverley, 404 F.3d 243, 248 (4th Cir. 2005) (quotation omitted); see Brownback v. King, 141 S. Ct. 740, 747 n.3 (2021); Lucky Brand Dungarees, Inc., 140 S. Ct. at 1594. Claim preclusion "encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes." Pueschel, 369 F.3d at 354 (quotation omitted); see Brown v. Felsen, 442 U.S. 127, 131 (1979).

12

A North Carolina state court issued the earlier decision, and North Carolina claim preclusion rules apply. See Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 506–09 (2001); Hately v. Watts, 917 F.3d 770, 776–78 (4th Cir. 2019); Q Int'l Courier, Inc. v. Smoak, 441 F.3d 214, 218 (4th Cir. 2006). Under North Carolina law, the party invoking claim preclusion must show: "(1) a final judgment on the merits in an earlier suit, (2) an identity of the cause of action in both the earlier and the later suit, and (3) an identity of parties or their privies in the two suits." Orlando Residence, Ltd. v. All. Hosp. Mgmt., LLC, 375 N.C. 140, 151, 846 S.E.2d 701, 708–09 (quotation omitted), reh'g denied, 376 N.C. 532, 847 S.E.2d 891 (2020); see Whitacre P'ship v. Biosignia, Inc., 358 N.C. 1, 15, 591 S.E.2d 870, 880 (2004); Thomas M. McInnis & Assocs., Inc. v. Hall, 318 N.C. 421, 429, 349 S.E.2d 552, 557 (1986).

Claim preclusion bars all of Zimmerman's claims against the remaining defendants except for his unjust enrichment claim against defendants ASM and OPV. See Venuto v. Witco Corp., 117 F.3d 754, 759–60 (3d Cir. 1997); 18 Charles Alan Wright, Arthur R. Miller, et al., Fed. Prac. & Proc. § 4413 (3d ed. April 2022 Update); cf. Russell v. Place, 94 U.S. 606, 608 (1876); Barrow v. D.A.N. Joint Venture Props. of N.C., LLC, 232 N.C. App. 528, 534, 755 S.E.2d 641, 646 (2014); Phipps v. Paley, 90 N.C. App. 170, 174, 368 S.E.2d 21, 24 (1988). Accordingly, the court dismisses with prejudice defendants Waters, Jordan Price, Danco, Coggins, Parker, Ostmann, and the HOA, and dismisses with prejudice all claims against defendants ASM and OPV other than Zimmerman's unjust enrichment claim.

C.

As for Zimmerman's unjust enrichment claim against ASM and OPV, he asserts that claim under the court's supplemental jurisdiction based on his federal claims against all defendants for

13

violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO").[4] Am. Compl. ¶¶ 224–61. As discussed, claim preclusion bars Zimmerman's RICO claim. Alternatively, Zimmerman fails to plausibly allege a RICO claim. RICO provides civil remedies "when a plaintiff has suffered an injury to his business or property as a result of a violation of section 1962." Alley v. Angelone, 962 F. Supp. 827, 832 (E.D. Va. 1997). A RICO plaintiff must plausibly allege that the defendants engaged in or conspired to engage in "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985) (footnote omitted); US Airline Pilots Ass'n v. Awappa, LLC, 615 F.3d 312, 317–18 (4th Cir. 2010). A RICO plaintiff also "must adequately plead at least two predicate acts of racketeering." Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare, Inc., 367 F.3d 212, 233 (4th Cir. 2004).

Zimmerman's wholly conclusory allegations concerning predicate acts are nothing more than mere "labels and conclusions." Iqbal, 556 U.S. at 678 (quotation omitted); see Giarratano, 521 F.3d at 304 n.5; Drummond v. Zimmerman, 454 F. Supp. 3d 1210, 1218–19 (S.D. Fla. 2020). Moreover, Zimmerman lacks standing to assert RICO violations deriving from injuries the HOA suffered. See Joffroin v. Tufaro, 606 F.3d 235, 238–40 (5th Cir. 2010); cf. Schalamar Creek Mobile Homeowner's Ass'n, Inc. v. Adler, 855 F. App'x 546, 549–51 (11th Cir. 2021) (per curiam) (unpublished). Thus, Zimmerman's RICO claims against all defendants fail as a matter of law.

Claim preclusion bars all of Zimmerman's claims, including his RICO claims, other than his unjust enrichment claim against ASM and OPV. Moreover, Zimmerman does not plausibly allege a RICO claim. The court declines to exercise supplemental jurisdiction over the unjust enrichment

---

[4] Because Zimmerman, ASM, and OPV are all North Carolina citizens, the case lacks complete diversity even if Zimmerman is correct than the amount in controversy exceeds $75,000. See 18 U.S.C. § 1332; Am. Compl. ¶¶ 3, 9, 11, 15.

14

claim and dismisses without prejudice that claim. Even if claim preclusion did not bar Zimmerman's other claims, the court alternatively would decline to exercise supplemental jurisdiction over those claims as well. See 28 U.S.C. § 1367(c)(3); Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966); ESAB Grp., Inc. v. Zurich Ins. PLC, 685 F.3d 376, 394 (4th Cir. 2012); Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995).

IV.

The court has considered the parties' motions for sanctions and the record in light of the governing standard. See, e.g., Fed. R. Civ. P. 11; Brubaker v. City of Richmond, 943 F.2d 1363, 1373 (4th Cir. 1991); In re Kunstler, 914 F.2d 505, 513–21 (4th Cir. 1990). In its discretion, the court declines to impose sanctions. The court warns Zimmerman that filing a frivolous lawsuit is a serious matter, and filing a frivolous lawsuit could subject him to monetary sanctions and restrictions on his right to file actions in the Eastern District of North Carolina. Zimmerman should consult with an attorney and carefully consider that attorney's professional advice before filing any other action in this court. Finally, the court denies Zimmerman's motion for entry of default for the reasons stated in defendants' responses in opposition.

V.

In sum, the court GRANTS IN PART defendants' motions to dismiss [D.E. 31, 36, 41, 53] and DISMISSES the action. The court DENIES the parties' motions for sanctions [D.E. 36, 41, 53, 70, 74, 76] and plaintiff's motion for entry of default [D.E. 48]. The clerk shall close the case.

SO ORDERED. This 27 day of June, 2022.

JAMES C. DEVER III
United States District Judge